IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ALEXANDRA IRENE BENSON,

        Plaintiff,　　　　　　　　　　No.  3:11-cv-00537-HZ

    v.

MICHAEL J. ASTRUE, Commissioner,　　　OPINION & ORDER
Social Security Administration,

        Defendant.

GEORGE J. WALL
1336 E. Burnside Street, Suite 130
Portland, Oregon 97214

    Attorney for Plaintiff
///
///
///
///
///
///

1 - OPINION & ORDER

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

NANCY A. MISHALANIE
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900
Seattle, Washington 98104-7075

  Attorneys for Defendant

HERNANDEZ, District Judge:

  Plaintiff Alexandra Benson ("Benson") brings this action for judicial review of the Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income payments under Titles II and XVI of the Social Security Act ("the Act"). I have jurisdiction under 42 U.S.C. § 405(g). For the following reasons, I reverse and remand the Commissioner's decision for further proceedings.

## BACKGROUND

  Born in 1983, Ms. Benson applied for benefits on July 23, 2007, alleging disability since January 1, 2004. Tr. 234-40. She alleges disability due to attention-deficit hyperactivity disorder, borderline personality disorder, and other personality disorders. Tr. 280. The Commissioner denied her applications initially and upon reconsideration, and an Administrative Law Judge ("ALJ") held a hearing on December 1, 2009. Tr. 61-87. The ALJ found Ms. Benson not disabled on January 21, 2010. Tr. 16-25. The Appeals Council denied review of the matter on March 3, 2011. Tr. 1.

**SEQUENTIAL DISABILITY ANALYSIS**

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the Act. 20 C.F.R. §§ 404.1520; 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. If the claimant does not have such a severe impairment, she is not disabled. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii); 416.909; 416.920(a)(4)(ii).

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. If the impairment is determined to equal a listed impairment, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e); Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. If the claimant can perform her past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(vi). If the ALJ finds that the claimant's RFC precludes

performance of her past relevant work the ALJ proceeds to step five.

At step five the Commissioner determines if the claimant is capable of performing work existing in the national economy. If the claimant cannot perform such work, she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(f); 416.920(a)(4)(v); 416.920(f) Yuckert, 482 U.S. at 142; Tackett, 180 F.3d at 1099.

The initial burden of establishing disability rests upon the claimant. Yuckert, 482 U.S. 137, 146 n5; Tackett, 180 F.3d at 1098. If the sequential disability analysis reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." Tackett, 180 F.3d. at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. § 404.1520(g); 416.1520(g); Tackett, 180 F.3d at 1099.

## THE ALJ'S DECISION

The ALJ found Ms. Benson's attention deficit hyperactivity disorder ("ADHD"), borderline personality disorder, and alcohol and drug dependence "severe" at step two in the Commissioner's disability analysis. Tr. 18. The ALJ found these impairments did not meet or equal listed disorders pertaining to mental impairments. She found that Ms. Benson retained the RFC to perform medium work under the Commissioner's regulations, with additional limitations to simple, unskilled work with a "specific vocational preparation" ("SVP") level one or two, minimal interaction with coworkers, and brief, superficial contact with the general public. Tr. 20. Further, Ms. Benson requires routine, low stress work "that does not involve significant changes or adaptations." The ALJ subsequently found that Ms. Benson did not have past relevant work under the Commissioner's

disability analysis, but found that she could perform work existing in the national economy. Tr. 24-25. The ALJ therefore found Ms. Benson not disabled. Tr. 25.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Bray v. Comm'r of the Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bray, 554 F.3d at 1222 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006)), see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, this court cannot now rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. Bray, 554 F.3d at 1225-26 (citing SEC v. Chenery Corp., 332 US 194, 196 (1947)); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (citing same).

## DISCUSSION

Ms. Benson asserts that the ALJ improperly evaluated various medical source opinions, and erred at step three in the sequential proceedings. She consequently asserts that the ALJ should have

found her disabled.

**I.    Medical Source Statements**

Ms. Benson argues that the ALJ improperly evaluated the opinions of examining psychologist Kimberly Wolk Golletz, Ph.D., and her therapists, Kim Christensen, Licensed Professional Counselor ("LPC"), and Larry Smith, LPC.

**A.    Standards: Medical Source Statements**

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). When making that determination, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician. Id. If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. Id. at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

**1.    Examining Psychologist Kimberly Wolk Golletz, Ph.D.**

Ms. Benson asserts that Dr. Golletz's opinion supports a finding of disability at step three in the sequential proceedings. Pl.'s Opening Br. 11-12. She does not articulate specific error in the ALJ's evaluation of Dr. Golletz's opinion. Id.

Dr. Golletz evaluated Ms. Benson in June 2008 following a referral by Ms. Benson's mother. Tr. 575. Dr. Golletz performed a clinical examination and cognitive, intelligence, and personality testing. Tr. 578-79. She assessed diagnoses of borderline personality disorder and dysthymic

disorder, and wrote, "Attention Deficit Hyperactivity Disorder, diagnosed in childhood, should be ruled out." Tr. 580. Dr. Golletz concluded that Ms. Benson "needs comprehensive treatment for borderline personality disorder," including medication evaluation, group and individual therapy, and dialectical behavioral therapy. Id.

The ALJ discussed Dr. Golletz's report. Tr. 23. She assigned "moderate weight to Dr. Golletz's opinion as to her diagnosis and observations, but limited weight as to the severity of the claimant's impairments and limited weight in the sense that the opinion does not give a detailed residual functional capacity as it relates to the claimant's ability to work." Id.

The ALJ must provide specific and legitimate reason for rejecting a contradicted medical source opinion, and clear and convincing reasons for rejecting an uncontradicted opinion. Lester v. Chater, 81 F.3d at 830. Here, Dr. Golletz opined that Ms. Benson had borderline personality disorder and possible ADHD. Tr. 580. All medical sources of record agree that Ms. Benson carries these diagnoses, and the ALJ found these impairments "severe." Tr. 18. Dr. Golletz's opinion on the matter is therefore uncontradicted, but the ALJ also accepted these diagnoses, and therefore did not error regarding Dr. Golletz's diagnostic impressions.

Dr. Golletz also described Ms. Benson's mood and behavioral difficulties, indicating that they were consistent with her personality disorder. Tr. 580. She specifically cited Ms. Benson's history of unstable relationships, mood, poor self-image, and "marked impulsivity and poor decision making." Id. She wrote:

> [Ms. Benson] is highly emotionally reactive and can be extremely hostile. Ms. Benson displays intense anger and appears to have little control over her anger. Her suspiciousness appears at times to be paranoid. She has been unable to find a stable living situation or maintain a job for more than a few months. She has a history of substance abuse and legal problems. Id.

7 - OPINION & ORDER

Dr. Golletz subsequently stated that Ms. Benson requires comprehensive treatment for her borderline personality disorder, and, finally, her "emotional regulation and social skills are currently so extremely poor as to make it difficult to imagine her working with other people in a cooperative manner. Id.

The ALJ's finding that Dr. Golletz did not give a detailed residual functional capacity as it relates to Ms. Benson's work abilities is therefore not based upon the record. Dr. Golletz clearly indicated Ms. Benson's work-related limitations pertaining to her mood, personality, and behavioral impairments. Tr. 580. This opinion is based upon psychological testing and examination (Tr. 575-79), and is therefore sufficiently supported. The ALJ's conclusion regarding Dr. Golletz's opinion and Ms. Benson's workplace abilities is simply not based upon the record and is not sustained.

### 2. Treating Therapists

Ms. Benson asserts that the ALJ erroneously evaluated the opinions of treating therapists Larry Smith, LPC, and Kim Christiansen, LPC. Pl.'s Opening Br. 6-11. Mental health therapists are designated as "other" medical sources under the Commissioner's regulations. 20 C.F.R. §§ 404.1513(d)(1); 416.913(d)(1). Such sources may show the severity of a claimant's impairment and how it effects her ability to work. Id.

#### i. Larry Smith, LPC

Mr. Smith treated Ms. Benson regularly between December 2004 and May 2005. Tr. 395, 431. In December 2004, Mr. Smith performed an intake evaluation and assessed oppositional defiant disorder, attention deficit disorder, and ADHD, and borderline personality disorder. Tr. 434. During the following six months, Mr. Smith discussed Ms. Benson's behavior and progress at group therapy meetings. According to Mr. Smith, Ms. Benson's participation in therapy varied, and her behavior

8 - OPINION & ORDER

was offensive, sarcastic, beligerent, sad, angry (Tr. 405), and inappropriate. Tr. 398, 421. Mr. Smith also stated that Ms. Benson needed to acquire social skills, and that her style of interpersonal interaction was an obstacle to her functionality. Tr. 425-26.

On August 14, 2007, Mr. Smith wrote a letter to the record, stating that he treated Ms. Benson between December 2004 and May 2005, and did not have current knowledge of her mental and physical functioning. Tr. 394. He added that, during the period he treated Ms. Benson, "she seemed to me to be very easily agitated, offended or hurt. She would react intensely toward others in a manner that made it impossible for her to maintain relationships. I think, at that time, she was incapable of sustaining employment because of those characteristics and behaviors." Id.

The ALJ cited and dismissed Mr. Smith's treatment notes, assigning these notes "limited weight" because they did not contain a residual functional capacity. Tr. 22. The ALJ also noted Mr. Smith's August 14, 2007, letter, and again gave Mr. Smith's opinion limited weight "as it is not backed up with any objective medical testing findings or evidence from him." Tr. 23.

The record shows that Mr. Smith treated Ms. Benson in a clinical setting for six months. Tr. 395-444. During this time Mr. Smith performed clinical evaluations and noted Ms. Benson's group therapy progress. As an "other" medical source, Mr. Smith's opinion is valuable because it provides insight into Ms. Benson's functioning. See 20 C.F.R. §§ 404.1513(d)(1); 416.913(d)(1) (explaining that "other sources" may show the severity of a claimant's impairment and how it effects her ability to work). Here, Mr. Smith clearly discussed Ms. Benson's erratic moods and behavior, specifically noting her intrapersonal difficulties. Tr. 395-444.

The ALJ may consider the extent to which a medical source opinion is supported, 20 C.F.R. §§ 404.1527(d)(3); 416.913(d)(3), and may reject an opinion without supporting notes or clinical

findings, Bayliss, 427 F.3d at 1216.  However, no authority suggests that "other" medical source observations regarding the severity of a claimant's impairment and its effect upon a claimant's limitations must be based upon objective medical testing.  The ALJ's reasoning in rejecting Mr. Smith's opinion is not based upon the appropriate legal standards pertaining to "other" medical sources, and is therefore not sustained.

### ii.    Kim Christiansen, LPC

Ms. Christiansen treated Ms. Benson regularly between April 2009 and November 2009.  Tr. 627, 636.  Ms. Christiansen's April 2009 intake assessment concluded that Ms. Benson has a history of unstable behavior and "relational" problems that prohibited her from keeping a job, and expressed paranoia.  Tr. 646.  She also stated that Ms. Benson engaged in "maladaptive" behavior such as verbally abusive and offensive behavior and substance abuse.  Tr. 647.  Ms. Christiansen updated this assessment on November 19, 2009, and stated:

> Ms. Benson continues to struggle in quite a few areas including attachment to others, maintaining employment, maintaining nurturing relationships, and reactivity of mood, responding emotionally to certain cues . . . . She continues to struggle with hyperactivity, having difficulty sitting still in a therapy setting or classroom setting.  She lacks attention to cues and awareness of how her behaviors impact others in many situations.  When she is made aware of this impact, she seems to have no trouble understanding it.  She obtained employment during the current treatment episode and was unable to maintain it, being laid off just after training for her position.  She stated they gave her no clear reason for asking her to leave.  Tr. 636.

On November 20, 2009, Ms. Christiansen wrote a letter to the record stating that she was unable to comment upon Ms. Benson's workplace limitations because she never evaluated Ms. Benson in a workplace setting.  Tr. 633.  She attached a narrative describing Ms. Benson's RFC limitations.  Tr. 634-35.  Here Ms. Christiansen stated that Ms. Benson is often disorganized, and

her concentration fluctuates with her mood. Tr. 634. In a calm mood she can carry out simple tasks; in an emotional state of mind Ms. Benson is unable to complete any tasks. Id. Ms. Christiansen also wrote that Ms. Benson demonstrates an inability to interact appropriately with others and has difficulty responding to criticism. Id. Ms. Benson's ability to maintain a clean appearance varies, and she is able to respond well to expected changes "most of the time." Id.

The ALJ cited Ms. Christiansen's treatment notes, but did not discuss their content. Tr. 22. She again assigned "limited weight" to these notes because they contained "no residual functional capacity analysis or opinions." Tr. 22. This analysis misreads Ms. Christensen's reports. Ms. Christensen submitted a two-page narrative document to the record directly addressing Ms. Benson's "residual functional capacity." Tr. 633-35. Here Ms. Christiansen addressed Ms. Benson's "understanding and memory," "concentration and persistence," "social interaction," and "adaptation" skills. Id. The ALJ's finding that Ms. Christiansen failed to address Ms. Benson's RFC is not based upon the record and is not sustained.

The ALJ also rejected Ms. Christiansen's November 20, 2009, Residual Functional Capacity statement as "Dr. [sic] Christiansen had never observed or evaluated [Ms. Benson] in a workplace setting." Tr. 23. No authority requires that a medical source, including "other" medical sources, directly observe a claimant in a workplace setting. The Commissioner's regulations state that the RFC is based upon "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). The ALJ's reasoning that Ms. Christiansen's opinion is entitled to less weight because she did not observe Ms. Benson in a work setting is therefore not sustained.

### 3.   Reviewing Psychologists Robert Henry, Ph.D., and Arthur Lewey, Ph.D.

Finally, the Commissioner asserts that the ALJ properly relied upon the opinions of Disability

Determination Services reviewing psychologists Robert Henry, Ph.D., and Authur Lewey, Ph.D. Def.'s Br. 13. These sources assessed no significant defects in Ms. Benson's workplace functioning. Tr. 520; 560-61. A contradicted reviewing physician's opinion may not constitute substantial evidence justifying rejection of a treating or examining medical source opinion. Lester, 80 F.3d at 830. Contrary to the Commissioner's submission, the examining and treating source opinions discussed above clearly contradicts the opinions of Drs. Henry and Lewey. This argument is therefore rejected.

### C.     Conclusion: Medical Source Statements

In summary, the ALJ erroneously evaluated the medical source opinions discussed above. The ALJ's emphasis that a medical source opinion must directly address a claimant's RFC is especially misplaced. The ALJ must evaluate the medical source opinion in construing the claimant's RFC herself. The ALJ's findings are not based upon the record and are not sustained. The effects of these errors are discussed below.

## II.    Step Three Findings

Ms. Benson asserts that the opinions discussed above establish disability at step three in the sequential proceedings. Pl.'s Opening Br. 5-10.

### A.     Step Three Standards

At step three, the ALJ must determine whether a claimant's medically determinable impairment "meets" or "equals" associated criteria in the Commissioner's regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). This determination must be adequately explained. Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

The Listing for all Personality Disorders requires that a claimant first show one of several

"deeply ingrained, maladaptive patterns of behavior," and at "marked" restriction in activities of daily living, maintaining social functioning or concentration persistence, and pace, or an episode of decompensation. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.08.

### B.     Analysis

The ALJ's step three analysis discussed Ms. Benson's ADHD, borderline personality disorder, and drug and alcohol dependence. Tr. 19-20. The ALJ discussed Ms. Benson's activities of daily living, social functioning, and concentration, persistence, and pace. Tr. 23. Each of these assessments was based upon references to the record. Id. Such analysis is sufficiently specific under the step three standards articulated above.

However, the ALJ erroneously assessed the opinions of Dr. Golletz, Mr. Smith, and Ms. Christiansen. The ALJ's step three findings therefore cannot be sustained to the extent that the ALJ did not consider these opinions in her step three findings.

However, Ms. Benson presently fails to explain the manner in which the medical evidence discussed above establishes that she meets Listing § 12.08. After reviewing the opinions of Ms. Christiansen and Mr. Smith, she states only, "the medical evidence plaintiff is a woman who endured a horrendous childhood and is eager to thrive as an adult, but simply lacks the ability and skills to succeed in employment . . . . [T]he ALJ failed to give proper attention to the medical evidence that . . . plaintiff meets the listing for § 12.08." Pl.'s Opening Br. 10. She does not point to specific evidence that, if credited by this court, shows a specific "marked" deficit required under 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.08. This argument therefore fails.

### III.    Remand

The ALJ erroneously evaluated the opinions of Dr. Golletz, Mr. Smith, and Ms. Christiansen.

13 - OPINION & ORDER

This error subsequently tinged her sequential disability analysis. Consequently, the ALJ's step three and RFC findings are flawed, and her conclusions cannot be sustained.

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000), cert. denied, 531 US 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Strauss v. Comm'r, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir 2004)). The court may not award benefits punitively, and must conduct a credit-as-true analysis to determine if a claimant is disabled under the Act. Id. at 1138.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id. The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. Connett, 340 F.3d at 876 (citing Bunnell v. Sullivan, 947 F2d 341, 348 (9th Cir. 1991)(en banc)). The reviewing court declines to credit testimony when "outstanding issues" remain. Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010).

The ALJ's analysis the opinions of Dr. Golletz, Mr. Smith, and Ms. Christiansen is erroneous

14 - OPINION & ORDER

for the reasons discussed above.  The ALJ's subsequent RFC assessment and hypothetical questions to the vocational expert at step five in the sequential disability analysis are therefore not based upon the proper legal standards.

In determining whether to award benefits or remand the matter for further proceedings the court must determine whether "outstanding issues remain in the record" under the second prong. Strauss, 635 F.3d at 1138.  Neither party asserts that the record is insufficient, and the court finds the record sufficiently developed.

Therefore the court must finally determine whether the record clearly requires an award of benefits after the improperly rejected evidence is credited.  Id.

Ms. Benson asks the court to credit Dr. Golletz's opinion, specifically Dr. Golletz's statement that, because of Ms. Benson's poor emotional regulation and social skills, it is "difficult to imagine [Ms. Benson] working with other people in a cooperative manner."  Pl.'s Reply Br., 3.  Here, the vocational expert was not asked to consider Ms. Benson's alleged difficulty in working with others, only whether an employer would tolerate an "argumentative" employee.  Tr. 86.  Dr. Golletz's statement therefore cannot establish disability under a credit-as-true analysis.

Ms. Benson's counsel further asked the vocational expert to consider an individual who could not concentrate for two hours.  Tr. 86.  He based this hypothetical question upon an unidentified counselor's statement that Ms. Benson is unable to complete any tasks in an emotional state of mind. Tr. 86.  This evidence correlates with Ms. Christiansen's November 20, 2009, RFC narrative stating that Ms. Benson is unable to complete any tasks in an emotional state of mind.  Tr. 634.  However, Ms. Christiansen concurrently stated that Ms. Benson's mood and associated concentration fluctuates.  Id.  When Ms. Benson is in a calm mood, she can carry out simple and somewhat

15 - OPINION & ORDER

detailed instructions. Id. Ms. Christiansen did not indicate how frequently Ms. Benson experiences such interruption from her moods.

Therefore, it is not clear from the record how frequently Ms. Benson's was unable to perform work in the national economy. Outstanding issues must be resolved before a determination that an award of benefits is inappropriate. Accordingly, the court declines to credit the improperly omitted testimony. Luna, 623 F.3d at 1035. The matter must be remanded for further proceedings to address the opinions of Dr. Golletz, Mr. Smith, and Ms. Christiansen. If necessary, the ALJ must then make an RFC determination, and make adequate step four and five findings incorporating any revised findings.

The record additionally suggests that Ms. Benson's substance abuse may have contributed to her limitations. The Act and the Commissioner's regulations prohibit payment of benefits when drug and alcohol use is a material factor in a claimant's disability. 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. §§ 404.1535 and 416.935. Therefore, the ALJ must also consider the effect of this substance abuse upon any finding of disability.

## CONCLUSION

For the reasons above, the Commissioner's decision should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for the further proceedings.

IT IS SO ORDERED.

Dated this ___18th___ day of June, 2012.

                                        /s/ Marco A. Hernandez
                                        Marco A. Hernandez
                                        United States District Judge